# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00026-CV

### Arlington Independent School District, Appellant

### v.

### Texas Education Agency, Robert Scott, Designee of Commissioner of Education, and Lisa Kim McCaleb, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. GV 401532, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

This case arises out of a grievance filed by Lisa Kim McCaleb and denied by the Arlington Independent School District. McCaleb appealed to the Commissioner of Education and on March 25, 2004, the Commissioner's designee signed a decision granting McCaleb's appeal ("the Commissioner's decision" or "the decision"). On March 26, the decision was mailed by certified mail to Jennifer Riggs, who represented the District as "attorney of record," and Sandra Houston, general counsel for the District; a copy was sent by first-class mail to the District's superintendent. A green certified-mail card showed that Riggs received the notice on March 29, but her law firm date stamp says it was received on April 1. The green card for Houston's notice is not dated, but it was postmarked on March 30. The District timely filed a motion for rehearing on April 15. The Commissioner and the Texas Education Agency did not act on the motion, which was overruled by operation of law forty-five days after the District received the decision; the District's petition for

judicial review was due thirty days later. *See* Tex. Gov't Code Ann. §§ 2001.144(a)(2), .146(c), .176(a) (West 2000).

The District filed its petition on June 15, and the Agency filed a plea to the jurisdiction, arguing that the petition was untimely and did not invoke the trial court's jurisdiction. After a hearing on the Agency's plea, the trial court found that both Houston and Riggs were attorneys of record for the District, that Riggs received notice of the Agency's decision on March 29, that Houston received it on March 30, and that the deadline for filing the District's petition was June 14. The court concluded that the District's petition was untimely and dismissed the case for lack of jurisdiction. Because the trial court did not err in finding that Riggs received the Agency's decision on March 29, we affirm the trial court's order of dismissal.

**Discussion**

We review a trial court's findings of fact under the same standards applied to a jury's findings, reviewing to ensure they are supported by legally and factually sufficient evidence, and we review its conclusions of law de novo. *AT&T Corp. v. Rylander*, 2 S.W.3d 546, 551-52 (Tex. App.—Austin 1999, pet. denied). We will uphold a trial court's conclusions of law if they "can be sustained on any legal theory supported by the evidence." *Id*. at 552. When considering the factual sufficiency of the evidence supporting a trial court's finding of fact, we consider all of the evidence and will uphold the contested finding unless the supporting evidence is so weak or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Id*. at 551-52.

A party seeking judicial review of an agency's administrative decision must file its petition for review no later than the thirtieth day after the decision becomes final and appealable.

2

Tex. Gov't Code Ann. § 2001.176(a). If a timely motion for rehearing is filed, a decision becomes final when the motion is overruled. *Id*. § 2001.144(a)(2). If the agency does not act on the motion within forty-five days after the party received notice, the motion is overruled by operation of law, rendering the decision final and appealable. *Id*. §§ 2001.146(c), .176(a).

The central question in this case is when the time for filing the petition for review began to run. The District contends that it did not begin to run until April 1, when Riggs's office date-stamped the Commissioner's decision, in which case the petition for review was timely, and that it rebutted the presumption that Riggs received notice on March 29. The District argues that although Riggs's office received the cover letter on March 29, she did not receive a copy of the decision until April 1. The Agency argues that time began to run March 29, asserting that the evidence shows that Riggs received a copy of the decision on that date, or March 30, when Houston received it.

At the hearing on the Agency's plea to the jurisdiction, Joan Allen, general deputy counsel for the Agency, testified about the Agency's procedures for mailing the Commissioner's decisions to parties. She testified that the signed decision is copied and a cover letter is prepared and addressed to the parties. The decision and cover letter are folded together and placed in an envelope; the two documents are not stapled together, but the decision is folded around the letter so that when the documents are unfolded, the cover letter is on top of the decision. The envelope is sealed, a certified-mail green card is attached to the back of the envelope, and the envelope is sent to the mail room for postage and mailing. Allen testified that in the more than eighteen years that she had been Director of Hearings, the Agency had never mistakenly sent a cover letter without its accompanying

3

decision. She said that the Agency had discovered the occasional error, such as missing pages in a decision or an "egregious typo," in which case the Agency generated a corrected copy and sent it with a new cover letter informing the parties of the error and stating that all time lines would run from the receipt of the new, corrected decision.

Allen personally handled the mailings in McCaleb's case and testified that the green cards in the Agency's file bore notations in her handwriting showing the Agency's docket number and that the decision was mailed on March 26. The green card mailed to Riggs states that the envelope was received on March 29, and a report from the United States Postal Service's website also shows March 29 as the date of delivery. Allen testified that neither Riggs nor anyone in Riggs's office contacted her office to report that they had not received the Commissioner's decision or to request a copy of the decision. She explained that although her office did not keep a log of all calls received, at the pertinent time, her clerk was on leave, leaving only Allen and the administrative law judge to cover the office, and that neither of them received a call stating that Riggs's office did not receive the decision with the cover letter. Allen further testified that she "only mailed out the Commissioner's decision to the parties one time, on March the 26th." Allen did not think it was possible that the cover letter and decision became separated before being mailed and recalled folding the cover letter inside the decision and taping the bulky envelope shut. Asked whether something could have happened to damage or open the envelope after she sent it for mailing, Allen testified that she "put the green card receipt in a position where it covered both the flap and the envelope and we got the green card back," which gave her "some assurance that it arrived intact," although she admitted that she did not know that for a fact.

4

Riggs testified that she did not dispute that she received the certified envelope containing the cover letter on March 29. She said "no one in my office, including myself, has a specific recollection of a decision not being with the letter, but we also don't have a specific recollection of receiving" the decision. Riggs testified that her secretary was "extremely diligent" and meticulous and that she had never known her secretary "to separate a document from its [cover] letter and stamp them in different dates." She testified that ordinarily, when an agency's decision is received, her office calendared time lines "from the date on the order," rather than the date of receipt, ignoring the date on the cover letter. However, on cross-examination, Riggs stated that her office "may have calendared [the motion for rehearing] from the last day of the letter notifying us of the decision," rather than the date of the decision.

The District introduced into evidence Riggs's copy of the decision, which was stamped "received" on April 1. Riggs believed that "the date that we stamp something received consistent with our regular business practice is some evidence of when it was, in fact, received." She testified, "What we believe happened was that we got the letter. It did not have a decision. We asked for a decision, got one, stamped it received, calendared it from that date." However, Riggs did not "have a specific recollection of that," nor did anyone in her office, and her office does not have a mail log to show receipt of a second mailing from the Agency. Riggs further testified that her usual practice was to call her client as soon as she received an agency decision. Her recollection was that she called the District as soon as she received the decision, and she testified that she called the District on April 1, not March 29 or 30. Asked whether she knew when her office received the decision, Riggs testified, "I know we received the decision on April 1st, a copy of the decision." She

5

explained that she had that knowledge "[b]ecause we stamped it received, because I called Ms. Houston and talked to her about it. And I don't have a recollection of receiving the decision on the 29th. And I believe I would have called her that very day. And if I had received it that day—I am the one who asks that things be calendared. And I would have calculated the deadline at that point."

The District argues that its evidence rebutted the presumption of March 29 delivery. The District does not dispute that Riggs received the cover letter on March 29, but argues that it "presented evidence that the decision was not attached and was not received by" Riggs's office until April 1. We disagree.

Allen, who personally prepared the documents for mailing, testified that she folded the letter inside the decision, taped both inside an envelope, and placed the green card over the envelope flap. She further testified that in eighteen years, the Agency had never mailed a cover letter without the accompanying decision. Riggs testified that her office's usual practice was to stamp documents as received immediately. Because her office's copy of the decision was stamped as received on April 1, she believed that the Agency had mistakenly omitted the decision from the envelope received on March 29, that someone in her office requested a copy, and that the Agency mailed it after the cover letter had already been sent. The trial court was basically asked to evaluate the usual practices of Riggs's and Allen's offices. Riggs had no actual recollection that the decision was not with the cover letter and had to be requested from the Agency, nor did anyone in her office have such a memory. Allen testified that her office did not receive any requests for a copy of the decision or other notice that the decision was not included with the cover letter and that she or the administrative law judge would have been the ones to receive such a call. Further, Riggs testified

6

that her office's practice was to calendar time lines from the date of the agency decision, but for some reason the motion for rehearing was calendared from the date of the cover letter, rather than the date of the decision.

*See AT&T Corp.*, 2 S.W.3d at 551-52. Therefore, the decision became final and appealable on May 13, forty-five days after Riggs received the decision and the date on which the District's motion for rehearing was overruled by operation of law.[1] *See* Tex. Gov't Code Ann. § 2001.146(c). Thus, the deadline for filing the petition for judicial review was June 14, the first Monday following thirty days from May 13. *See id*. § 2001.176(a). The District's petition, filed on June 15, was untimely, and the trial court properly dismissed the suit for lack of jurisdiction. *See Heart Hosp. IV, L.P. v. King*, 116 S.W.3d 831, 835 (Tex. App.—Austin 2003, pet. denied) (failure to exhaust all administrative remedies, including timely motion for rehearing and filing petition for review within statutory deadline, is jurisdictional defect; trial court is "generally without jurisdiction to review the agency's decision unless and until the plaintiff files a petition for judicial review within the statutorily prescribed fourteen days"); *see also Brown v. Texas Educ. Agency*, No. 03-00-00433-CV, 2002 Tex. App. LEXIS 4575, at *3-4 (Tex. App.—Austin June 27, 2002, pet. denied) (not designated for publication) (holding that statutory deadlines to appeal from administrative proceeding are jurisdictional and cannot be extended).

**Conclusion**

---

[1] May 13, 2004 fell on a Sunday, so the decision arguably became final on May 14, the following Monday. However, thirty days from May 14 fell on Sunday, June 13, meaning the petition for review was still due on June 14.

7

Sufficient evidence supports the trial court's finding that Riggs received notice on March 29, and that evidence is not overwhelmed by contrary evidence that would render the trial court's determination manifestly unjust. Therefore, the District's petition for review must be considered untimely. Due to our resolution of the District's third issue, we need not consider the District's remaining issues on appeal. We affirm the trial court's order of dismissal.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: October 5, 2006